**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **ZHENG HENG ZHENG AND** | § | **CASE NO. 25-33138** |
| **YUE XI DONG** | § | **(Chapter 11)** |
| Debtor | § | **JUDGE RODRIGUEZ** |

<u>**PLAN OF REORGANIZATION UNDER 11 U.S.C. §1121**</u>

In accordance with 11 U.S.C. §1121 and §1106, Debtors file this Plan of Reorganization as follows:

**1.      DEFINITIONS**

For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

1.1      **"Absolute Priority Rule"** The principle of bankruptcy law requiring the claims of a dissenting class of creditors be paid in full before any class of creditors junior to such dissenting class may receive or retain any property in satisfaction of their claims (§1129(b)(2), Bankruptcy Code). It prevents a plan of reorganization from being crammed down on unsecured creditors unless equity security holders, who are junior in priority to unsecured creditors, receive no distributions. A corollary to the absolute priority rule prohibits a plan of reorganization from paying more to a class than what it is owed (though this principle is not expressly stated in the Bankruptcy Code).

1.2      **"Administrative Claim"** means any Claim constituting a cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.3      **"Administrative Claimant"** means any Person, including a Professional, entitled to payment on account of an Administrative Claim.

1.4      **"Allowed,"** when used with respect to a Claim means a Claim (i) to the extent it

is not Contested; or (ii) a Disputed Claim, proof of which was filed timely with the Bankruptcy Court, and (A) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy court; or (B) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order.  "Allowed," when used with respect to an Administrative Claim of a Professional shall mean an Administrative

Claim approved by application to the Bankruptcy Court and entry of a Final Order approving such Administrative Claim.

1.5     **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.6     **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.7     **"Confirmation"** shall mean the approval by the Court of the Plan.

1.8     **"Confirmation Date"** means the date of entry of the Confirmation Order.

1.9     **"Confirmation Hearing"** means the hearing conducted as it may be continued from time to time by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan.

1.10    **"Confirmation Order"** means an order entered by the Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.  The confirmation order is final fourteen (14) days after it is entered by the Court or on the conclusion of an appeal of the confirmation order.

1.11    **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.12    **"Creditors"** shall mean all creditors of the Debtor holding claims for debts, liabilities, or demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code.

1.13    **"Debtors"** shall mean Zheng Heng Zheng and Yue Xi Dong.

1.14    **"Debtor's Assets"** shall mean all right, title and interest in and to all property of every kind or nature, whether known or unknown, owned by Debtor or the Estate,

including, but not limited to, any cash, real property interests, tax refunds, equipment, furniture, or other tangible property. accounts receivable, work-in-process, contract rights, insurance policies, intangible property, books and records, and whether known or unknown, causes of action, including, but not limited to, (i) all claims and rights against insiders and affiliates of Debtor and third parties and (ii) all claims and rights arising under or related to the Bankruptcy Code, including but not limited to, sections 362, 505, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

1.15    **" Claim" s**hall mean a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been or may be timely filed and has not been denied by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

1.16    **"Distribution Date"** shall mean the 15th day of the first month of the first full quarter following the Effective Date of the Plan.

1.17    **"Effective Date"** shall mean thirty (30) days after the Plan is confirmed by the Court.

1.18    **"Final Order"** shall mean an Order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which, or to seek review or certiorari or rehearing, has expired and such Order has become conclusive upon all matters adjudicated thereby, and in full force and effect.

1.19    **"Insider"** shall have that meaning defined by 11 U.S.C. §101 (31).

1.20    **"Official Committee of Creditors"** shall mean those creditors appointed by the Office of the United States Trustee to serve in this Case.  None has been appointed in this case.

1.21    **"Plan"** shall mean this Plan of Reorganization in its present form, or as it may be amended or supplemented from time to time.

1.22    **"Priority Claim"** means those Allowed Claims which are entitled to the priority provided for under §507(a) of the Bankruptcy Code.

1.23 **"Reorganized Debtors** shall mean the Debtors after the entry of Order Confirming Plan.

1.24 **"Secured Claim"** shall mean a Claim secured by a perfected valid and enforceable lien on property in which the Debtor has an interest, of a value determined in accordance with 11 U.S.C. §506(a), or as may otherwise be determined in the course of Claim allowance under this Plan or the Bankruptcy Rules and law.

1.25 **"Secured Tax Claim"** shall mean a claim described in 11 U.S.C. §507(a)(8) together with all accrued interest and penalties, which is also a Secured Claim.

1.26 **"Substantial Consummation"** shall occur upon the payment of the first distribution under the Plan.

1.27 **"Unsecured Claim"** means any Claim that is not a Secured Claim, Administrative Claim or Priority Claim.

## 2. GENERAL TERMS AND CONDITIONS

2.1 This Plan is intended to deal with all claims against the Debtors of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code. However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive treatment afforded by the Plan in Section 4.

## 3. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

3.1 **Payment of Administrative Expense claims.** Each holder of an Administrative Claim that becomes an Allowed Administrative Claim on or after the date the confirmation order is final shall receive without interest on the date the confirmation order is final, subject to court approval, the amount of such claim, unless such holders have agreed to a different treatment of such claim. An Administrative Claim that becomes an Allowed Administrative Claim on or after the confirmation order is final shall receive without interest the amount of such claim. Except as provided in section 4.1.1, a claim for an Administrative Claim shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or its respective properties, agents, successors or assigns, unless a request for payment of Administrative Claim is filed with the Court and served upon the Reorganized Debtor and Debtor's counsel no later than sixty (60) days after the Confirmation Date. All payments for allowed Administrative Claims due on the date the confirmation order is final, subject to Court approval, shall be made by the Reorganized Debtor.

4

3.2 **Payment of United States Trustee Fees Incurred Prior to Confirmation.** All fees incurred pursuant to 28 U.S.C. §1930(a)(6) for time periods prior to entry of the Confirmation Order shall be paid by the Debtor on the date the confirmation order becomes final.

3.3 **Payment of United States Trustee Fees Incurred Subsequent to Confirmation.** All fees incurred pursuant to 28 U.S.C. §1930(a)(6) for time periods subsequent to entry of the Confirmation Order shall be paid by the Reorganized Debtor from their assets. After Confirmation, the Reorganized Debtor shall file with the court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to the Reorganized Debtor by the United States Trustee.

3.4 **Payment to Professionals.** Claims of professionals for services provided and expenses incurred prior to the entry of the confirmation order shall be deemed Administrative Claims and shall be paid as provided in section 4.1.1 of the Plan; provided however, that notwithstanding the provisions of section 4.1.1, requests for payment of claims of professionals as Administrative Claims shall be filed with the Court and served on the Reorganized Debtor, Debtor's counsel and the United States Trustee within sixty (60) days after the confirmation order is entered. All such claims not so filed will be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or its respective properties, agents, successors or assigns. Claims of professionals for the services rendered and expenses incurred after the confirmation order is final shall be paid as agreed by the Reorganized Debtor from its Property.

## 4. PLAN TREATMENT AND IMPLEMENTATION

### 4.1 Identification and Treatment of Classes of Creditors

Class 1 – for disclosure purposes only, not entitled to vote.

Administrative Claims

**Cooper & Scully, PC** – Claim of Cooper & Scully, PC, Attorneys at Law, for representing the Debtor in this matter under §507(a)(1). Cooper & Scully holds a retainer balance in the amount of $15,000.00 and estimates fees and expenses in the amount of $50,000 and the Debtor is to pay any balance owed and approved by the Court on the effective date of the plan.

**U.S. Trustee Fees -** All U.S. Trustee fees unpaid on the Effective Date of the Plan will be paid in full on the Effective Date. The Reorganized Debtor shall timely pay post-confirmation

quarterly fees assessed under 28 U.S.C. §1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee true and correct statement of all disbursements made by the Reorganized Debtor for each quarter, or portion thereof, that this Chapter 11 case remains open. The Debtor understands that U.S. Trustee fees will be due and payable throughout the Chapter 11 Plan term.

This class is unimpaired

## Class 2 - Priority Unsecured Claims

None.

## Class 3 – Ad Valorem Taxing Authorities

### Class 3(a) - Montgomery County

Montgomery County filed proof of claim 1 as a secured claim for the tax year 2025, in the total amount of $12,789.70. The taxes are due on or before January 31, 2026. This claim is secured in the amount of $1,877.09 by a statutory lien on the Debtors' property located at 13210 FM 2432, Conroe, Texas ("FM 2432"). This claim is further secured in the amount of $10,912.61 by a statutory lien on the Debtors' property located at 2446 W. Bramlet Drive, Conroe, Texas ("Bramlet"). The Debtors are in the process of selling both of these properties and the claims of Montgomery County will be paid in full at closing on each respective property. In the event that either or both properties have not sold and closed as of January 31, 2026, the Debtors will pay the property taxes in full for FM 2432 in the ordinary course of their business. The property taxes for Bramlet are paid by the mortgage company from the related escrow account. In any event, the property taxes for both properties will be paid in full on or before January 31, 2026.

### Class 3(b) - Walker County Appraisal District

Walker County Appraisal District filed proof of claim 6 as a secured claim for the tax year 2025, in the total amount of $8,882.41. The taxes are due on or before January 31, 2026. This claim is secured in the amount of $4,018.62 by a statutory lien on the Debtor's property located at 108 Pine Valley, Huntsville, Texas ("Pine Valley"). This claim is further secured in the amount of $4,863.79 by a statutory lien on the Debtor's property located at 83 Chandler Road, Huntsville, Texas ("Chandler"). The Debtors intend to retain the Pine Valley property and the property taxes are paid by the mortgage company from the related escrow account. The property taxes for Chandler are also paid by the mortgage company from the related escrow account. In any event, the property taxes for both properties will be paid in full on or before January 31, 2026.

**Class 3(c) - Willis Independent School District**

Willis Independent School District filed proof of claim 7 as a secured claim for the tax year 2025, in the total amount of $3,358.26. The taxes are due on or before January 31, 2026. This claim is secured in full by a statutory lien on the Debtor's FM 2432 property. The Debtors are in the process of selling FM 2432 and the claim of Willis Independent School District against that property will be paid at closing. In the event that the sale of FM 2432 has not closed as of January 31, 2026, the Debtors will pay the property taxes in full in the ordinary course of their business. In any event, the property taxes for FM 2432 will be paid in full on or before January 31, 2026.

**Class 3(d) - Montgomery County MUD #107**

Montgomery County MUD #107 filed proof of claim 8 as a secured claim in the amount of $2,160.92. The taxes are due on or before January 31, 2026. This claim is secured in full by a statutory lien on the Debtor's Bramlet property. The Debtors are in the process of selling Bramlet and the claim of Montgomery County MUD #107 against that property will be paid at closing. If the sale of Bramlet has not closed as of January 31, 2026, the property taxes will be paid by the mortgage company from the related escrow account. In any event, the property taxes for Bramlet will be paid in full on or before January 31, 2026.

**Ad Valorem Taxing Authority Liens**

The Ad Valorem Taxing Authorities will retain all post-petition tax liens until all amounts due have been paid in full. The Debtors will pay the 2025 and subsequent taxes either through a mortgage escrow or in the ordinary course of business prior to delinquency, without the need to file a request for payment or administrative claim. In the event the Debtors do not pay post-petition taxes prior to delinquency under Texas law, the Ad Valorem Taxing Authorities will send notice of default to the Debtors and Debtors' counsel and the Debtors will have 15 days to cure the default or defaults, including the payment of interest that has accrued after the default. The Ad Valorem Taxing Authorities are required to give only two (2) notices of default under the Plan. If a default is not cured or a third default occurs, the Ad Valorem Taxing Authorities are entitled to take any and all action authorized under Texas law to collect the tax amounts due as calculated under Texas law in state court without further order of the bankruptcy court. These ad valorem taxes are secured as statutory first liens against FM 2432, Chandler, Bramlet and Pine Valley.

This class is impaired

**Class 4 – Secured Claims**

**Class 4(a) – BAMC Enterprises, Inc. ("BAMC")**

BAMC holds a claim in the amount of $200,000.00 secured by a real estate lien on the Debtors' property located at 13210 FM 2432, Conroe, Texas (the "FM 2432 Property"). On July 21, 2025, the Court entered an order authorizing the Debtors to employ Adam S. Olsen and eXp Realty ("eXp") as real estate agents for the estate.   eXp is currently marketing the FM 2432 Property for $850,000.00.   Although Montgomery County values the FM 2432 Property at $343,216.00, the Debtors believe it to be an extremely low value as this is a six acre commercial property improved with a driveway with frontage on FM 2432.  BAMC shall be paid from the sale of the FM 2432 Property.  If the FM 2432 Property sells pre-confirmation, BAMC shall receive $200,000 at closing in full satisfaction of its claim and shall not be entitled to any payments under the confirmed Plan.  If the FM 2432 Property has not sold pre-confirmation, then the Debtors shall begin making monthly payments to BAMC in the amount of $1,000.00 per month, beginning on the 15th day of the first full month of the first full quarter following confirmation of the Plan.   These payments shall continue on a monthly basis until closing on the sale of the FM 2432 Property at which time BAMC shall receive the amount of $200,000 in full satisfaction of its secured claim.  The Debtor shall have one year from the Effective Date of the Plan to sell the FM 2432 property and pay this claim in full.

Class 4(a) is impaired.

**Class 4(b) – Bank of America ("BofA").**

BofA holds a claim in the amount of $15,979.63 secured by a lien on the title of the Debtors' 2019 Ford F350 Truck.  The Debtors shall continue to make monthly payments to BofA in the amount of $696.37 per month until this claim is paid in full.  Once the claim is paid in full, BofA shall release its lien on the title to the 2019 Ford F350 truck.  From the filing date there are approximately 23 payments remaining on this claim.

Class 4(b) is unimpaired.

**Class 4(c) – Cornerstone Mortgage ("Cornerstone").**

Cornerstone holds a claim in the amount of $532,955 secured by a real estate lien on the Debtors' homestead located at 83 Chandler Road in Huntsville, Texas.   The Debtors are preparing to list this property for sale and use the proceeds from the sale to pay Cornerstone in full and purchase a new homestead.  The Debtors shall continue making the monthly mortgage payments during the pendency of this Chapter 11 proceeding and post-confirmation in the amount of $4,224.74 until closing on the sale of the homestead.

Class 4(c) is unimpaired.

**Class 4(d) – First National Bank ("FNB").**

FNB holds a claim in the amount of $15,043.00 secured by a lien on the title to a 2024 Quality Trailer Food Truck.  The Debtors shall continue making payments in the amount of

$336.62 per month until the Food Truck is either sold or this claim is paid in full. If the Food Truck is sold, it may only be sold for an amount sufficient to pay this claim in full at which time the lien on the title to the Food Truck shall be released. If the claim is paid in full through monthly payments, the lien on the title shall be released upon receipt of the final monthly payment.

Class 4(d) is unimpaired.

**Class 4(e) – George Lee**.

George Lee holds a claim in the amount of $200,000 secured by a lien on the Debtors' Bramlet property. On July 21, 2025, the Court entered an order authorizing the Debtors to employ Adam S. Olsen and eXp Realty ("eXp") as real estate agents for the estate. eXp is currently marketing the Bramlet property for $549,000. Montgomery County values the Bramlet Property at $502,282.00. Weststar Mortgage holds a first lien mortgage against Bramlet in the amount of $158,367.00. George Lee shall be paid from the sale of the Bramlet Property after the payment in full of all closing costs, agent commissions, real property taxes, Weststar Mortgage, and the capital gains taxes, if any. If the Bramlet Property sells pre-confirmation, George Lee shall receive $200,000 at closing in full satisfaction of his claim and shall not be entitled to any payments under the confirmed Plan. If the Bramlet Property has not sold pre-confirmation, then the Debtors shall begin making monthly payments to George Lee in the amount of $1,000 per month, beginning on the 15th day of the first full month of the first full quarter following confirmation of the Plan. These payments shall continue on a monthly basis until closing on the sale of the Bramlet Property at which time George Lee shall receive the amount of $200,000 in full satisfaction of his secured claim.

Class 4(e) is impaired.

**Class 4(f) – Select Portfolio Servicing, Inc. ("Select")**.

Select holds a claim in the amount of $192,453.77 secured by a lien on the Debtors' Pine Valley property. The Debtors intend to retain this property and will continue making their monthly mortgage payments in the amount of $2,161.39 per month to Select both pre and post-confirmation. Once all payments have been made under the applicable mortgage documents, Select shall file a release of lien in the real property records of Walker County thereby releasing the mortgage lien on Pine Valley. Until such time as the mortgage on Pine Valley is paid in full, Select shall retain its lien on this property.

Class 4(f) is unimpaired.

**Class 4(g) – Toyota Financial Services ("Toyota")**.

Toyota holds a in the amount of $19,904.48 secured by a lien on the title of the Debtors' 2021 Toyota Sienna. The Debtors shall continue to make monthly payments to Toyota in the

amount of $607.59 per month until this claim is paid in full.  Once the claim is paid in full, Toyota shall release its lien on the title to the 2021 Toyota Sienna.  From the filing date there are approximately 38 payments remaining on this claim.   Until such time as the lien on the title to the 2021 Toyota Sienna is paid in full, Toyota shall retain its lien on this vehicle.

Class 4(g) is unimpaired.

**Class 4(h) – Weststar Mortgage Corp. ("Weststar").**

Weststar holds a claim in the amount of $158,367.00 secured by a first lien mortgage on the Debtors' Bramlet property.  On July 21, 2025, the Court entered an order authorizing the Debtors to employ Adam S. Olsen and eXp Realty ("eXp") as real estate agents for the estate. eXp is currently marketing the Bramlet Property for $549,000.  Montgomery County values the Bramlet Property at $502,282.00.  George Lee holds a second lien against Bramlet in the amount of $200,000.  Weststar shall be paid from the sale of the Bramlet Property after the payment in full of all closing costs, agent commissions, and real property taxes.  The Debtors shall continue making the monthly mortgage payments in the amount of $2,528.00 until the closing on the sale of Bramlet.  Until such time as the closing on the sale of Bramlet, Weststar shall retain its first mortgage lien on that property.

Class 4(h) is impaired.

**Class 4(i) – Teas Crossing West Commercial LLC ("Teas").**

Teas filed a proof of claim in the amount of $792,082.93 consisting of the following:

| | | |
|---|---|---|
| 1. | Principal | $708,650.39 |
| 2. | Attorney's Fees | 18,031.20 |
| 3. | Interest to the Filing Date | 65,401.34 |

Pursuant to a settlement agreement between Teas and the Debtors, the Debtors paid a total of $259,016.06 which, excluding interest, leaves a balance due of $467,665.53.  Unless Counsel for Teas and Counsel for the Debtor can agree on a corrected balance due as of the Filing Date, the Debtor shall object to this claim based upon payments made and not credited.

This claim is secured by an abstract of judgment lien filed in the real property records of Montgomery County, Texas on September 13, 2024.  The Debtors' Bramlet and FM 2432 properties are subject to this lien.

Teas shall receive the equity from the sale of Bramlet and FM 2432 after the payment in full of the closing costs, commissions, real property taxes, mortgages, second liens, if any, and capital gains taxes, in full satisfaction of its secured claim.  In the event there remains a deficiency claim it shall be treated in class 5, infra.

10

Class 4(i) is impaired.

**Class 5 – General Unsecured Non-Priority Claims.**

Class 5 consists of the general, unsecured non-priority claims in the approximate amount of $1,308,911.18.[1]

The holders in this class shall receive their pro-rata distribution of any proceeds from the sale of the FM 2432 and Bramlet properties after the payment of all closing costs, agent commissions, real property taxes, secured mortgages and other secured claims, and capital gains taxes. In addition, the Debtors shall pay a total of $140,000 from their disposable income to be distributed quarterly to the creditors in this class on a pro-rata basis. The distributions for the first year will be a total of $12,000 and for years two through five the distributions will be a total of $32,000 per year. The quarterly payments shall begin on the 15th day of the first full month of the first full quarter and continue quarterly for 20 quarters (5 years).

The liquidation analysis reflects that these general unsecured creditors would not receive a distribution in a chapter 7 bankruptcy case. In this chapter 11 case they will be receiving 27% of their claims which meets the "best interest of the creditors test."

Class 5 is impaired.

A failure by the Reorganized Debtors to make a payment to any of its creditors pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtors fail to cure an Event of Default as to such payments within thirty (30) days after receipt of written notice of default from a creditor, then that creditor may (a) exercise any and all rights and remedies the creditor may have under applicable state law; and/or (b) seek such relief as may be appropriate in this Court.

      **4.2     Treatment of Executory Contracts and Unexpired Leases.**

The Debtors do not have any executory contracts or unexpired leases.

      **4.3     Means for Execution of the Plan**

           **4.3.1   Vesting of Property of the Estate in the Reorganized Debtor**

On the date the confirmation order becomes final all remaining property of the Debtors and of the Estate shall vest in the Reorganized Debtors free and clear of liens, claims, interests and encumbrances arising on or before the Effective Date, except as otherwise provided in the

---

[1] The deadline to file non-governmental claims is October 6, 2025. Therefore, this claim total is based on the Debtor's books and records. The total amount may increase or decrease depending upon claims filed prior to the deadline.

Plan or the Confirmation Order. If the Reorganized Debtors default in performing under the provisions of this Plan and this case is converted to a case under Chapter 7 prior to Substantial Consummation of this Plan, all property vested in the Reorganized Debtors and all subsequently acquired property owned by the Reorganized Debtors as of or after the conversion date shall revest in the Debtors and constitute property of the bankruptcy estate in the converted case.

### 4.3.2   Continuation of Business Operations

From and after the date the confirmation order becomes final, the Reorganized Debtors are authorized to continue normal business operations and enter into such transactions as they deem advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

### 4.3.3   Management of the Reorganized Debtor

As this is an individual Chapter 11, this provision does not apply.  The Debtors shall manage all of their property and business interests.

### 4.3.4   Discharge of Debtor

**Discharge of Zheng Heng Zheng and Yue Xi Dong** – Pursuant to 11 U.S. C. §1141(5)(A), after completing all payments under the Plan Zheng Heng Zheng and Yue Xi Dong will be required to petition the court to receive a discharge from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtors will not be discharged of any debt (i) imposed by this Plan; (ii) of a kind specified in 1141(d)(2) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or of a kind specified in §1141(d)(3).

### 4.3.5   Continuation of Anti-Discrimination Provisions of Bankruptcy Code

A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, the Reorganized Debtors or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

### 4.3.6   Regulatory Approvals

This Plan is not intended to modify or supplant any regulatory authority over the Debtors or the Reorganized Debtors.  Therefore, all regulatory approvals required in connection with the Plan will be sought and obtained by the Reorganized Debtors.

### 4.3.7    Employment of Professionals and Experts

The Reorganized Debtors may, but shall not be required to, consult with attorneys, accountants, appraisers, brokers or other parties necessary to assist in the proper administration of this Plan and the affairs of the Reorganized Debtors.  The Reorganized Debtors may select and employ such persons without Bankruptcy Court review or approval.

### 4.3.8    General Powers

The Reorganized Debtors shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable law.  The Debtors shall have the power to take all such actions as in its business judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to each power expressly granted in the subsections below and any power reasonably incidental thereto.  The Debtors shall have the power to:

a.    Make all distributions for or contemplated by this Plan.

b.    Consistent with maintaining the value and liquidating the residual assets of the Reorganized Debtors, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof.

c.    Supervise and administer the resolution, settlement and payment of Claims and the distributions to the holders of Allowed Claims in accordance with this Plan.

d.    Enter into any agreement required by or consistent with the Plan and perform all of their obligations thereunder.

e.    Abandon any of the assets of the Reorganized Debtors if they conclude that such assets are of no benefit to the Creditors.

f.    Market and sell the Debtors' assets in accordance with the exercise of prudent business judgment.

g.    Participate in or initiate any proceedings before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and litigate claims on behalf of the Reorganized Debtors, including without limitation all causes of action under Chapter 5 of the Bankruptcy Code and all state and federal causes of action or any other litigation which constitute an asset of the Reorganized Debtors and pursue to settlement or judgment such actions.

h.    Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving this Chapter 11 Case.

i.    Act in the name of or in the place of the Debtors in any action before the United States Bankruptcy Court or any other judicial or administrative body.

j.    Select and employ such professionals, agents or employees as they deem necessary to assist in the administration of the affairs of the Reorganized Debtors and compensate such persons.

k.    Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan.

l.    Propose any amendment, modification or supplement to this Plan.

m.    Receive, conserve and manage the assets of the Reorganized Debtors and sell or otherwise dispose of such assets for a price and upon such terms and conditions as they deem most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith.

n.    Open and maintain bank accounts on behalf of or in the name of the Reorganized Debtors.

o.    Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Reorganized Debtors.

p.    Pay all lawful expenses, debts, charges and liabilities of the Reorganized Debtors.

q.    Enforce all provisions of this Plan.

r.    Protect, perfect and defend the title to any of the assets of the Reorganized Debtors and enforce any bonds, mortgages or other obligations or liens owned by the Reorganized Debtors.

s.    Carry insurance coverage, including insurance to protect the post-confirmation Reorganized Debtors against claims brought against them acting in their capacities as the Reorganized Debtors, in such amounts as he deems advisable.

t.    Establish such reserves for taxes, assessments and other expenses of administration of the Reorganized Debtors as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Reorganize Debtors.

u.     Exercise such other powers and duties as are necessary or appropriate in their discretion to accomplish the purposes of the Plan.

### 4.3.9   Records

The Reorganized Debtors shall maintain books and records relating to the affairs of the Reorganized Debtors, and all expenses incurred by or on behalf of the Reorganized Debtors. The Reorganized Debtors shall also maintain records relating to all distributions either required to be made or effectuated under this Plan.

### 4.3.10  Effectuating Documents and Necessary Authorizations

The Plan Documents, which consist of all documents and exhibits that aid in effectuating the Plan will be executed and, if appropriate, filed with the appropriate governmental authorities on or before the Effective Date of the Plan, and they will become effective on the Effective Date of the Plan.  The Debtors will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtors, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

### 4.3.11  Reliance by Management

Reorganized Debtors may rely, and shall be fully protected in acting or refraining from acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which they reasonably believe to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Reorganized Debtors may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Reorganized Debtors may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by them in accordance therewith.

## 5.     CLAIM OBJECTION PROCEDURES

### 5.1     Objection Deadline and Process

The Reorganized Debtors shall have the exclusive right to object to the allowance of any Claims provided for under the Plan.  All Claim objections must be filed within 30 days after the confirmation order is final.  All requests for a determination under 11 U.S.C. § 505 must be filed within 30 days after the confirmation order is final.

**5.2      Provisions Governing Distributions**

No distributions shall be made to any Class until all of the Claims in that class are resolved and an Allowed Amount is reached either by agreement or by Court Order.  Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the Debtors have been notified in writing of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtors are notified in writing of such holder's then current address.  All claims for undeliverable distributions must be made on or before the later of the first anniversary of the Effective Date of the Plan, or the ninetieth (90th) day following the date on which such Claim is Allowed.  After such date, all unclaimed distributions will revert to the Debtors, and the Claim of any holder with respect to such distribution will be discharged and forever barred.  Checks issued with respect to Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof.

**6.      EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS**

**6.1      Impaired Classes to Vote**

Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated and undisputed in the Debtors' Schedules.

**6.2      Acceptance by Class of Creditors**

A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

**6.3      Reservation of Cramdown Rights**

In the event that any impaired class shall fail to accept this Plan in accordance with section 1129 (a) of the Bankruptcy Code, the Debtors reserve the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

**7.      EFFECT OF CONFIRMATION**

**7.1      Legally Binding Effect**

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan.  On and after the date the confirmation order is final, all holders of Claims shall be precluded and enjoined from asserting any Claim against the Debtor or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

### 7.2    Revesting of Property in the Debtor

At the time the confirmation order is final, all remaining property of the Estate shall vest in and become property of the Reorganized Debtors.  However, if the case is converted to a Chapter 7 proceeding, the property re-vested in the Debtors under the Plan, or subsequently acquired assets, shall constitute property of the bankruptcy estate in the converted case.

### 7.3    Liens, Claims and Encumbrances

Except as otherwise specifically provided in this Plan, or in the Confirmation Order, on the date the confirmation order is final all property vesting in and becoming property of the Reorganized Debtors shall be free of all liens, claims and encumbrances.

### 7.4    Injunction

Except as otherwise provided in the Plan, holders of Claims are enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against the Debtors, or their property to recover any Claim or Interest.  Upon Confirmation of the Plan, all creditors of the Debtors having an Allowed Claim herein shall be temporarily enjoined, pursuant to Section 105 of the Code, from proceeding against any guarantor, employee, or other responsible person of Debtors, individually, for the collection of all or any portion of their Allowed Claim, said injunction to remain in effect only for so long as the Debtors comply with the terms of the Plan.  Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtors of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party.  This litigation injunction is subject to the default and notice provisions set forth herein.

To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the bankruptcy petition date until the date upon which the Debtors fail to cure any written notice of default as set forth in the Plan.

### 7.5    Causes of Action

All claims and causes of action, including but not limited to claims recoverable under section 550 of the Bankruptcy Code are hereby preserved and retained for enforcement by the Reorganized Debtors after the confirmation order is final.

## 8.    RETENTION OF JURISDICTION

### 8.1    Exclusive Bankruptcy Court Jurisdiction

The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes after the confirmation order is final:

**8.1.1**    to insure that the purpose and intent of the Plan are carried out;

**8.1.2**    to consider any modification of the Plan under section 1127 of the Bankruptcy Code before substantial consummation as defined in section 1101(2) of the Bankruptcy Code;

**8.1.3**    to hear and determine all Objections to Claims, controversies, motions, applications, suits and disputes that may be pending at or initiated after the confirmation order is final;

**8.1.4**    to classify the Claims of any creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

**8.1.5**    to hear, determine, and enforce all claims and causes of action which may exist on behalf of the Debtor or its Estate, including but not limited to all causes of action available to the Debtor under Chapter 5 of the Bankruptcy Code;

**8.1.6**    to consider and act on the compromise and settlement of any Claim against or cause of action on behalf of the Debtor or the Estate;

**8.1.7**    to hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, execution, or enforcement of the Plan;

**8.1.8**    to hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the date the confirmation order is final which may be made after the confirmation order is final;

**8.1.9**    to enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

**8.1.10**    to enter an order closing the Chapter 11 Case;

**8.1.11**    to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Confirmation Order which may be necessary or helpful to carry out the

18

purposes and intent of the Plan;

**8.1.12** to consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

**8.1.13** to issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of this Plan; and

**8.1.14** to decide issues concerning the federal or state tax liability of the Debtor or the Reorganized Debtor which may arise in connection with the confirmation or consummation of this Plan.

### 8.2    Limitation on Jurisdiction

In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## 9.    CONDITIONS TO CONFIRMATION AND CONSUMMATION OF PLAN

### 9.1    Conditions to Confirmation of Plan

The Plan will not be effective unless (a) the Confirmation Order becomes a Final Order, and, (b) all Plan Documents and other applicable documents necessary or appropriate to the implementation of the Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities.

### 9.2    Annulment of Plan if Conditions Not Waived or Satisfied

The Debtor reserves the right to waive any of the conditions precedent to the effectiveness of either the Confirmation Order or the Plan.  If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtors and all parties in interest will return to the *status quo ante* immediately before the entry of the Confirmation Order.

## 10.    MISCELLANEOUS PROVISIONS

### 10.1    Payment of Fees

The Reorganized Debtors shall timely pay post-confirmation quarterly fees assessed under 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.  After confirmation, the Reorganized Debtors shall file with the Bankruptcy Court and shall transmit to the United States Trustee true and correct statements of all disbursements made by the Reorganized Debtors for each month, or portion thereof, that

this Chapter 11 case remains open.

### 10.2    Compliance with Tax Requirements

In connection with this Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions hereunder shall be subject to such withholding and reporting requirements.

### 10.3    Method of Surrender

In the event that any property is surrendered pursuant to this Plan, the surrender shall be effective by the filing of a notice with the Clerk within 30 days after the confirmation order is final reflecting the Debtors' intent to surrender the property.

### 10.4    Amendment of the Plan

This Plan may be amended or modified by the Debtors before, or by the Reorganized Debtors after, the date on which the confirmation order is final as provided in section 1127 of the Bankruptcy Code.

### 10.5    Withdrawal of Plan

The Debtors reserve the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors withdraw this Plan prior to the Confirmation Date, or, if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtors or any other person, or to prejudice in any manner the rights of the Debtors, the Debtors' estate or any person in any further proceedings involving the Debtors.

### 10.6    Notices

Any notices required to be given under this Plan shall be in writing.  Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; or (b) the date the notice is actually received.

Notices shall be sent to:

(a)    If to the Debtors, at:

Zheng Heng Zheng

Yue Xi Dong
83 Chandler Road
Huntsville, Texas 77320

And

Julie M. Koenig
26310 Oak Ridge Drive, Suite 34
The Woodlands, TX 77380

(b)     If to the U.S. Trustee, at:

United States Trustee's Office
515 Rusk, Suite 3516
Houston, TX   77002

(c)     If to any Creditor in its capacity as such, at its address or facsimile number as reflected on its proof of claim or Notice of Appearance, if any.

(d)     To any counsel for the Reorganized Debtors at such address or facsimile number as provided by the Reorganized Debtors.

### 10.7    Due Authorization By Creditors

Each and every Creditor who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

### 10.8    Filing of Additional Documentation

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 10.9    Implementation

The Debtors and the Reorganized Debtors shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

21

September 30, 2025

By: /s/ Zheng Heng Zheng
     Zheng Heng Zheng

By: /s/ Yue Xi Dong
     Yue Xi Dong

**Of Counsel:**
**Cooper & Scully, PC.**
By: /s/ Julie M. Koenig
Julie M. Koenig
SBN 14217300
815 Walker, Suite 1040
Houston, Texas 77002
Telephone:  (713) 236-6825
Julie.Koenig@cooperscully.com
Attorneys for the Debtor